United States District Court
Southern District of Texas
**ENTERED**
March 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **YURIANA BRICENO-BELMONTES,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. 2:20-CV-00114 |
| **COASTAL BEND COLLEGE,** | § § § | |
| **Defendant.** | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Yuriana Briceno-Belmontes contends that the Defendant, Coastal Bend College ("CBC"), discriminated against her on the basis of her national origin and retaliated against her for raising allegations of discrimination with her superiors. Before the Court is CBC's Motion to Dismiss Briceno-Belmontes's Second Amended Complaint. CBC argues that Briceno-Belmontes failed to sufficiently state claims upon which relief can be granted. For the reasons that follow, the Court **DENIES** the Motion.

### I.  BACKGROUND

For purposes of addressing this Motion, the Court accepts all factual allegations in the Complaint as true and views them in the light most favorable to Briceno-Belmontes. CBC is a community college in South Texas. Briceno-Belmontes is a Hispanic woman and citizen of the United States. (Dkt. No. 18 at ¶ 4). In March 2018, Briceno-Belmontes was hired by CBC to work as an academic advisor and recruiter at its Kingsville, Texas campus. (*Id.* at ¶¶ 9–10). Her responsibilities included attending recruiting events and making presentations at various schools. (*Id.* at ¶ 11). Student Services Director Amanda

Barrera was Briceno-Belmontes's supervisor from March 2018 through March 2019. (*Id.*). Executive Dean of Student Services Guadalupe Ganceres was Briceno-Belmontes's supervisor from March 2019 through Briceno-Belmontes's termination in June 2019. (*Id.* at ¶¶ 11, 23).

Briceno-Belmontes's earliest issue at work occurred in August 2018, when she was treated unfairly by an unnamed CBC administrator. (*Id.* at ¶ 13). Starting in January 2019, Briceno-Belmontes was subjected to a "pressure campaign" initiated by Ganceres and Kingsville Site Director Joseph Hayen. (*Id.* at ¶¶ 14–15). The "pressure campaign" is not described in detail in the Second Amended Complaint. Reading it in the light most favorable to Briceno-Belmontes, as the Court must, it appears to be an effort by her supervisors to force Briceno-Belmontes to purchase incidentals for her job and then seek reimbursement from CBC. *See* (*id.* at ¶¶ 13–16). This, Briceno-Belmontes asserts, was contrary to the letter of the purchasing policy of CBC, (*id.* at ¶ 16), and was meant to place her in a position that could compromise her employment. (*Id.* at ¶¶ 13, 17).

Briceno-Belmontes resisted and was accused of insubordination as a result. (*Id.* at ¶ 17, 22). In February 2019, she complained to CBC human resources manager Audrey Ramirez, Student Services Director Barrera, and Dean Ganceres about the reimbursement practice she was pressured to carry out. (*Id.* at ¶ 14). She attributed this mistreatment to national origin discrimination. (*Id.*). In April 2019, she filed a formal complaint against Hayen. (*Id.*). In May 2019, she complained a second time to the administrators about the reimbursement practice pressure campaign and once again attributed the situation to national origin discrimination. (*Id.*). On May 2, 2019, Briceno-Belmontes received an

"Employee Discipline Notice" for insubordination and violating CBC policies and procedures. (*Id*. at ¶ 22). The Amended Complaint does not make clear whether Briceno-Belmontes's internal complaint of discrimination or the disciplinary notice came first. Last, Briceno-Belmontes complained to Hector Villarreal, who assumed the role of Interim Kingsville Site Director at an unspecified time. (*Id.* at ¶ 23).

The events culminated in June 2019 when Briceno-Belmontes was fired for insubordination and violating CBC policies and procedures. (*Id.*). But other employees with comparable job titles and responsibilities who also resisted the reimbursement practice were not fired. (*Id.* at ¶ 25). Specifically, Mercy Boamah, a black academic advisor and recruiter at the CBC Alice campus, (*id.*), and Kristen Jambers, a white academic advisor and recruiter at the CBC Pleasanton campus, (*id.* at ¶ 28), did not receive the same treatment. Boamah and Jambers had the same supervisors as Briceno-Belmontes. (*Id.* at ¶¶ 11, 25–26, 28).

On January 15, 2020, Briceno-Belmontes filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting national origin discrimination and retaliation for engaging in protected activity. (*Id.* at ¶ 6). On February 18, 2020, the EEOC sent Briceno-Belmontes a Notice of Right to Sue. (*Id.* at ¶ 7). Briceno-Belmontes filed suit on May 12, 2020. After Briceno-Belmontes filed her Second Amended Complaint, CBC filed a Motion to Dismiss for failure to state a claim. (Dkt. No. 21). Briceno-Belmontes filed a Response, (Dkt. No. 22), and CBC filed a Reply, (Dkt. No. 23).

## II. LEGAL STANDARD

### A. RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.).

In reviewing a 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether "a complaint contains sufficient factual matter to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Dismissal . . .

is appropriate where the plaintiff fails to allege 'enough facts to state a claim that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

### III. DISCUSSION

#### A. TIMELINESS

As a threshold matter, CBC raises the issue of the timeliness of Briceno-Belmontes's claims. (Dkt. No. 21 at 10). CBC, citing the text of 42 U.S.C. § 2000e–5(e)(1), argues that Title VII plaintiffs in Texas must file a charge of discrimination with the EEOC within 300 days of learning of the conduct alleged, or the claim is barred. Briceno-Belmontes filed her charge on January 15, 2020. (*Id.* at 11). Because of the Title VII statutory bar, CBC asserts that any claims that arise out of discrete events that occurred before March 21, 2019—300 days earlier—must be dismissed. (*Id.*). Those would be Briceno-Belmontes's allegation of unfair treatment in August 2018, (Dkt. No. 18 at ¶ 13), and her allegation of discrimination based on her national origin in February 2019, (*id.* at ¶¶ 12, 14). Briceno-Belmontes responds by highlighting that the May 2019 allegation of national origin discrimination occurred within the 300-day window. (Dkt. No. 22 at ¶ 6).

In Texas, "a title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged." *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)), *abrogated on other grounds by Heath v. Bd. of Supervisors for S. Univ.*, 850 F.3d 731, 737 (5th Cir. 2017). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely

5

filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002). However, an act that happened outside the filing period "may constitute relevant background evidence in a proceeding in which the status of the current practice is at issue[.]" *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). A plaintiff can support a Title VII claim with conduct occurring more than 300 days before filing an EEOC charge if the plaintiff can allege facts that could show that "the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120–21, 122 S.Ct. at 2076 (alteration omitted); *see also Heath*, 850 F.3d at 736–39.

Briceno-Belmontes's claims stem from her June 2019 termination—which occurred within the statutory deadline. *See Morgan*, 536 U.S. at 114, 122 S.Ct. at 2073. The acts that occurred outside the filing period may constitute relevant background evidence. *See Evans*, 431 U.S. at 558, 97 S.Ct. at 1889. Thus, Briceno-Belmontes's claims are not time barred.

  **B.**  **NATIONAL ORIGIN DISCRIMINATION CLAIM**

CBC also challenges Briceno-Belmontes's national origin discrimination claim. CBC asserts that Briceno-Belmontes does not plead any direct evidence to support her Title VII claims, so they must be analyzed under the *McDonnell Douglas* burden shifting paradigm, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

6

(1973), to assess a circumstantial claim of employment discrimination.[1]  (Dkt. No. 21 at 11).  CBC concedes that, for purposes of the Rule 12(b)(6) pleading standard, Briceno-Belmontes establishes a *prima facie* case of national origin discrimination on the first three prongs of *McDonnell Douglas*.  (*Id*. at 12 n.1).  But CBC disputes that Briceno-Belmontes successfully pleads the fourth prong: that she was treated less favorably than others outside her protected class who were similarly situated to her.  (*Id*. at 12).  CBC argues that Briceno-Belmontes's comparators of Mercy Boamah and Kristen Jambers are not similarly situated because Briceno-Belmontes does not assert that they had the same disciplinary history nor adequately describe how they responded to the "pressure campaign" of the school administrators.  (*Id*. at 13–17).

Briceno-Belmontes counters that the comparators she identified are sufficient to state a *prima facie* case under the permissive Rule 12 pleading standards.  (Dkt. No. 22 at ¶¶ 6–12).  Briceno-Belmontes contends that CBC is mistakenly increasing the burden on her at the pleading stage to bring a circumstantial case of employment discrimination under Title VII.  (*Id*. at ¶ 9, 11–12).  The Court agrees with Briceno-Belmontes.

---

[1]  *See also Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).  Under the *McDonnell Douglas* test, a plaintiff must first make a *prima facie* showing of employment discrimination by demonstrating that she: (1) is a member of a protected class; (2) was qualified for the position that she held; (3) was subject to an adverse employment action; and (4) was treated less favorably than others similarly situated outside her protected class.  *Id*.  Once the employee makes a *prima facie* case, the burden "shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action."  *Id.*  If the employer can articulate such a reason, the burden shifts back to the employee to demonstrate that the employer's proffered reason is just a "pretext for discrimination."  *Id*.

CBC places too high a burden on Briceno-Belmontes. "At the Rule 12(b)(6) stage, [a court's] analysis of [a] Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*[.]" *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status."[2] *Id.* (internal quotations omitted) (emphasis in original).

Here, Briceno-Belmontes meets this burden. She states that her comparators—Boamah and Jambers—had the same job titles, responsibilities, and supervisors. (Dkt. No. 18 at ¶¶ 25–30). Most importantly, she pleads that they also "resisted the pressure campaign" and that they are a different race and were not fired. (*Id.*). Thus, Briceno-Belmontes plausibly claims that (i) she was subject to an adverse employment action—her termination—(ii) it was taken against her because of her protected status, and (iii) her comparators who are another race were not fired. This meets the *Swierkiewicz* requirements. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) ("The district court erred by holding [the plaintiffs] to a heightened pleading standard. The court's analysis of the complaint's allegations—scrutinizing whether [the plaintiffs']

---

[2] "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (internal quotations and citation omitted).

fellow employees were really 'similarly situated' and whether [their superiors'] derogatory statements about Italians amounted to 'stray remarks'—was more suited to the summary judgment phase.").

Furthermore, although a plaintiff does "not have to submit evidence to establish a prima facie case of discrimination [under *McDonnell Douglas*] at this stage, [she must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam). While it is not required at this stage, "it can be 'helpful to reference' [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim" because the plaintiff will eventually need to satisfactorily assert each element of the *McDonnell Douglas* test to meet her burden to recover. *Olivarez*, 997 F.3d at 600 (internal quotations omitted).

CBC concedes for the purposes of the pleading standards set out in *Twombly* and *Iqbal* that Briceno-Belmontes meets the first three prongs of the *McDonnell Douglas* test but disputes that the fourth prong is satisfied. (Dkt. No. 21 at 12 n.1). The Court disagrees. Briceno-Belmontes pleads sufficiently similar comparators who are of different races but who were not fired for the same conduct. This is enough at the Rule 12(b)(6) stage. Yes, whether Boamah and Jambers are "similarly situated" to Briceno-Belmontes is a question of law and faces a demanding standard in this Circuit, *see Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009), but that is for the Court to determine at the summary judgment stage. To impose such a rigorous inquiry at the

9

pleading stage, when discovery has not occurred, would make it nearly impossible to bring a circumstantial case of employment discrimination.

### C.  RETALIATION CLAIM

To establish Title VII retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).  For the following reasons, the Court finds that Briceno-Belmontes has stated a plausible claim.

#### 1.  **Protected Activity**

The first element of a Title VII retaliation claim requires the plaintiff to have engaged in protected activity.  The Fifth Circuit explained, "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. § 2000e–3(a))

CBC argues that, for the purposes of the Rule 12(b)(6) pleading standard, the only two activities that Briceno-Belmontes engaged in that are protected by Title VII are the instances in which she internally complained to CBC administrators about national origin discrimination.  (Dkt. No. 21 at 18–19).  Those were in February and May 2019.  (*Id.*) Briceno-Belmontes states in her Response, "Plaintiff engaged in protected activity in the month before [she was fired.  That is,] in May 2019."  (Dkt. No. 22 ¶ 13).  Briceno-Belmontes does not state what the protected activity was in which she engaged.

10

Reading the Second Amended Complaint in the light most favorable to Briceno-Belmontes, the Court finds that she engaged in activity protected by Title VII on at least two occasions—both times she complained internally about national origin discrimination in February and May 2019. (Dkt. No. 18 at ¶ 14). Bringing allegations of national origin discrimination to one's superiors is opposing a practice that is protected by Title VII. *Long,* 88 F.3d at 304.

### 2. Adverse Employment Action

The next inquiry is whether Briceno-Belmontes has pleaded facts sufficient to demonstrate that CBC took an adverse employment action against her. CBC argues the only adverse employment action was the firing of Briceno-Belmontes on June 10, 2019. (Dkt. No. 21 at 19). Briceno-Belmontes agrees. (Dkt. No. 22 at ¶ 13).

### 3. Causal Connection

The last element of a Title VII retaliation claim is a causal connection between the protected activity and the adverse employment action. CBC claims that Briceno-Belmontes does not establish the requisite causal connection. First, CBC argues Briceno-Belmontes "does not identify who made the decision to terminate her employment, nor does she allege whether that person was aware of her allegedly protected complaint(s)." (Dkt. No. 21 at 20). Second, CBC asserts that Briceno-Belmontes cannot rely on the temporal proximity of her internal complaints and her firing to create a causal connection. (*Id.*).

Briceno-Belmontes does not provide much of a response to CBC's causation argument. She does not address CBC's contention that she needs to identify a

11

decisionmaker as to her firing and plead facts sufficient to support a finding that this person was aware of her internal complaints. In the single paragraph devoted to the retaliation claim in her Response, Briceno-Belmontes states that the one-month difference between her complaint to the administrators and her firing is enough to create an inference of causation. (Dkt. No. 22 at ¶ 13). At this juncture, the Court agrees with Briceno-Belmontes.

As with a Title VII discrimination claim, at the pleading stage of a Title VII retaliation claim, a plaintiff need not make out a prima facie case of retaliation to survive a Rule 12(b)(6) motion to dismiss. *Wright*, 990 F.3d at 433. Rather, she only needs to plausibly allege facts "going to the ultimate elements of the claim." *Id*. Briceno-Belmontes satisfies her pleading burden. Her protected activities are her two instances of internal complaints of national origin discrimination. It is uncontested that her firing was an adverse employment action. And, reading the facts alleged in the light most favorable to Briceno-Belmontes, the Court could reasonably infer that CBC terminated her because of her complaints of national origin discrimination.

CBC is correct that, "to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003). This is because "quite logically, if an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Wright*, 990 F.3d at 434 (cleaned up).

Here, Briceno-Belmontes has met her burden for the moment. Briceno-Belmontes raised her internal complaint of national origin discrimination to her superiors Ramirez, Barrera, Ganceres, and Villarreal. (Dkt. No. 18 at ¶¶ 14, 23). At the motion to dismiss stage, complaining of national origin discrimination to the human resources manager, the student services director, the dean of student services, and the site director is enough to infer that the employer had knowledge of the employee's protected activity—even though Briceno-Belmontes does not state specifically who fired her. After all, pleading enough facts to state a plausible claim of retaliation "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" sufficient to state a claim. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Discovery will reveal whether the decisionmaker(s) had actual knowledge of Briceno-Belmontes's protected activity, or if she can advance a cat's paw theory, or neither. *See, e.g.*, *Zamora v. City Of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) ("Under [the cat's paw] theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action.").

Now for the heart of the causation dispute. Briceno-Belmontes maintains that the proximity of the second complaint to the administrators in May 2019 and her firing in June 2019 is enough to create an inference of causation. (Dkt. No. 22 ¶ 13). CBC vigorously disagrees. (Dkt. No. 21 at 20–21); (Dkt. No. 23 at 5). CBC makes a two-point argument, which it says is dispositive: (1) the Court *must* measure the difference between the February 2019 complaint and Briceno-Belmontes's firing—not the May 2019 complaint and her firing; *and* (2) that four months' difference between the complaint and

13

her firing is too long to create an inference of causation as a matter of law. The Court agrees with Briceno-Belmontes.

First, the cases cited by CBC are distinguishable. CBC provides the Court only with authority at the summary judgment stage for its propositions.³ At the summary judgment or post-trial stage, the parties have conducted meaningful discovery to unearth the factual record. In contrast, at the motion to dismiss stage the Court's sole duty is to "[focus] on the allegations in the pleadings, not whether a plaintiff actually has sufficient evidence to succeed on the merits." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007).

Second, CBC's line of argument is a tacit recognition that if Briceno-Belmontes's pleading had no mention of her February 2019 complaint, CBC would have no basis to object to the use of her May 2019 complaint and the June 2019 firing to create an inference of causation *See, e.g.*, *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (concluding that about two months' difference is close enough to show a *prima facie* causal connection, even in the more onerous summary judgment context). It is *Alkhawaldeh*, CBC asserts, that mandates dismissal because *Alkhawaldeh* holds that three to four months' delay between a protected activity and an adverse employment action is insufficient to

---

³ In its Motion to Dismiss, CBC relies on: *Harville v. City of Houston, Mississippi*, 935 F.3d 404 (5th Cir. 2019) (withdrawn) (post–summary judgment appeal); *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165 (5th Cir. 2014) (post–summary judgment appeal); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007) (post–summary judgment appeal); and *Widder v. Tex. A&M Univ. Corpus Christi*, No. 2:11-CV-00282, 2012 WL 3776477 (S.D. Tex. Aug. 29, 2012) (summary judgment). In its Reply, CBC again cites the withdrawn *Harville* opinion and cites *Alkhawaldeh*, 851 F.3d at 428 n.23 (post–summary judgment) and *Perkins v. Child Care Assocs.*, 751 F. App'x 469 (5th Cir. 2018) (per curiam) (unpublished and summary judgment).

create an inference, 851 F.3d at 428 n.23, and "a Title VII claimant cannot, with each protected activity, re-start 'the temporal-proximity clock.'" *Id.* The Court disagrees. Again, *Alkhawaldeh* was a summary judgment appeal in a case that was brought under the *McDonnell Douglas* framework. It follows then that the Fifth Circuit would foreclose subsequent protected activity, standing alone, from restarting the "temporal-proximity clock" after the plaintiff had the benefit of discovery. That is, it is logical that the Fifth Circuit would hold plaintiffs to a higher standard at that stage of a case—but at this stage, it is too much.

*Garayalde-Rijos v. Municipality of Carolina*, from the First Circuit, is instructive. 747 F.3d 15 (1st Cir. 2014). *Garayalde-Rijos* considers the use of temporal proximity to satisfy the causation requirement under a Title VII retaliation claim, but at the Rule 12(b)(6) stage, unlike CBC's cited cases. There, the First Circuit explained:

> The parties have directed us to no case dismissing a Title VII retaliation claim under Rule 12(b)(6) utilizing only a temporal analysis to defeat causation allegations. Once a complaint has alleged enough facts that retaliation for protected conduct is *plausible,* the plaintiff is entitled to proceed to discovery . . . . And discovery might unearth evidence of retaliation such that at summary judgment or trial, the plaintiff will not have to rely heavily on the "temporal proximity" between protected conduct and adverse actions to prove her case.

*Garayalde-Rijos*, 747 F.3d at 25 n.8 (emphasis in original).

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the case. Therefore, the Court finds that Briceno-Belmontes has pleaded sufficient facts showing a causal connection between her protected activity

15

and her firing that would permit the inference that CBC fired her because of her protected activity. *See Wright*, 990 F.3d at 434.

## IV. CONCLUSION

Considering the foregoing analysis, the Court **DENIES** CBC's Motion to Dismiss.[4] (Dkt. No. 21).

It is SO ORDERED.

Signed on March 5, 2022.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

[4] CBC's Motion to Dismiss also briefed that Briceno-Belmontes failed to plead a hostile work environment claim, (Dkt. No. 21 at 9, 17–18), even though Briceno-Belmontes's Second Amended Complaint only brings two counts—for national origin discrimination and retaliation, (Dkt. No. 18 at ¶¶ 31–40). CBC did this out of caution because Briceno-Belmontes states in her factual resume that "she was subjected to harassment on account of her national origin." (Dkt. No. 21 at 17) *citing* (Dkt. No. 18 at ¶ 12). In her Response, Briceno-Belmontes acknowledges that she only brings a national origin discrimination claim and a retaliation claim by again not addressing a hostile work environment claim.