United States District Court
Southern District of Texas
**ENTERED**
March 29, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| YURIANA BRICENO-BELMONTES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:20-CV-00114 |
| | § | |
| COASTAL BEND COLLEGE, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Yuriana Briceno-Belmontes brings claims of national origin discrimination and retaliation against the Defendant, Coastal Bend College ("CBC"). Pending before the Court is CBC's Motion for Summary Judgment. CBC maintains that Briceno-Belmontes failed to sufficiently exhaust her administrative remedies on her retaliation claim, fails to make *prima facie* cases of national origin discrimination and retaliation, and fails to rebut CBC's proffered reasons for her firing as pretextual. After reviewing the pleadings, the record and the applicable law, the Court **GRANTS** the Motion.

I.    **BACKGROUND**

Briceno-Belmontes is a Hispanic woman and citizen of the United States.[1] In March 2018, CBC hired her to work as an academic advisor and recruiter at its Kingsville, Texas campus. Her responsibilities included attending recruiting events and making

---

[1]    Except where noted, this section contains only undisputed facts which have been construed in the favor of the nonmovant, Briceno-Belmontes.

presentations at various schools.  Briceno-Belmontes had two levels of supervisors—one level was part of the central college administration, and the other level was the Kingsville site director.  Her first administration-level supervisor was Student Services Director Amanda Barrera and later became Executive Dean of Student Services Guadalupe Ganceres.  At Kingsville, her supervisors included Cynthia Alvarado-Stinson, Joseph Hayen, and supervisor was Hector Villarreal at various points in time.

In May 2019, Briceno-Belmontes received an "Employee Discipline Notice" for insubordination and violating CBC policies and procedures.  She was ultimately fired on June 10, 2019.

### A.    BRICENO-BELMONTES'S ALLEGATIONS

Starting in January 2019, Briceno-Belmontes was subjected to a "pressure campaign" initiated by Ganceres and Hayen "to funnel college funds through her personal bank account."  (Dkt. No. 18 at ¶¶ 14–15).  She believes her national origin was a motivating factor for this "pressure campaign."  (*Id.* at ¶ 14).  Briceno-Belmontes resisted and was accused of insubordination as a result.  (*Id.* at ¶¶ 17, 22).  She was persistently asked to "comingle college funds into her personal account" with "unyielding frequency." (*Id.* at ¶ 13).  Meanwhile, Hayen treated her disrespectfully over email.  (*Id.* at ¶¶ 18, 20).

Briceno-Belmontes was fired for resisting the pressure campaign.  But other employees with comparable job titles, responsibilities, and supervisors who also resisted the pressure campaign were not fired.  (*Id.* at ¶ 25).  Specifically, Mercy Boamah, a black academic advisor and recruiter at the CBC Alice campus, (*id.*), and Kristen Jambers, a

white academic advisor and recruiter at the CBC Pleasanton campus, (*id.* at ¶ 28), did not receive the same treatment.

### B.    CBC'S ALLEGATIONS

CBC paints a vastly different picture.  CBC denies Briceno-Belmontes's allegation that she was asked to "funnel college funds."  CBC states that Briceno-Belmontes objected to the CBC policy of providing academic advisors with petty cash or vouchers to purchase incidentals for recruiting events and then requiring them to submit receipts for reimbursement.  CBC points to a March 29, 2019 email from a CBC administrative assistant which details the general practice.  (Dkt. No. 26-3 at 3).  CBC also cites an email chain which details Briceno-Belmontes's reasons for objecting to the practice.  (Dkt. No. 26-4 at 2-4).  Briceno-Belmontes writes:

> Again I will NOT be accepting, cashing out any voucher/checks or direct deposits for CBC site activities on my personal bank account as this will inflate my *personal* bank deposits/or Income.  For instance, in the case that I were ever to apply for government assistance or on the opposite end; what if my account were to be on a negative balance, will the CBC deposit cover my personal negative bank account balance first?

(*Id.* at 3) (emphasis in original).  CBC further contends that Briceno-Belmontes: (1) was disrespectful and unprofessional over email, (*Id.*); (Dkt. No. 26-13 at 2–5); (Dkt. No. 26-14 at 2–3); (2) refused to attend meetings, (Dkt. No. 26-15 at 2–3); (Dkt. No. 26-20 at 2–3); and (3) spread false rumors about Hayen, (Dkt. No. 26-18 at 2); (Dkt. No. 26-16 at 2).

In her May discipline notice, Briceno-Belmontes was admonished to stop sending unprofessional emails and ignoring or rejecting meeting requests.  (Dkt. No. 26-21 at 4–

5).  She was also instructed to complete training webinars.  (*Id*.).  CBC claims that Briceno-Belmontes did not comply, so she was fired about a month later.  She was replaced by Jessica Cavazos, another Hispanic woman.  (Dkt. No. 26-9 at ¶ 12).

### C.   PROCEDURAL HISTORY

On January 15, 2020, Briceno-Belmontes filed a Charge of Discrimination.  (Dkt. No. 26-7).  On February 18, 2020, Briceno-Belmontes received a Notice of Right to Sue. (Dkt. No. 18 at 2).  Briceno-Belmontes filed suit on May 12, 2020.  (Dkt. No. 1).  After she filed her Second Amended Complaint, CBC moved to dismiss for failure to state a claim. (Dkt. No. 21).  Briceno-Belmontes responded, (Dkt. No. 22), and CBC replied, (Dkt. No. 23).  On February 4, 2021, CBC filed its Motion for Summary Judgment.  (Dkt. No. 26). Briceno-Belmontes filed a Response, in which she also lodged twenty-six separate objections to portions of the affidavit offered by CBC of Director of Human Resources Audrey Ramirez.[2]  (Dkt. No. 38).  CBC filed a Reply.  (Dkt. No. 39).  The Court denied CBC's Motion to Dismiss.  (Dkt. No. 46).  CBC then filed its Answer.  (Dkt. No. 47).

Briceno-Belmontes brings two claims under Title VII:  national origin discrimination and retaliation.  (Dkt. No. 18 at ¶¶ 31–40).  She seeks back pay and benefits, front pay, compensatory damages for physical and mental pain and suffering, attorney's fees and costs under 42 U.S.C. § 2000e-5(k), and interest.  (*Id*. at ¶ 41).

---

[2]    The Court relies upon none of the objected-to portions of the affidavit.  Accordingly, those objections are **OVERRULED** as moot.  *See, e.g., Garcia v. City of Laredo*, No. 5:12-CV-00117, 2014 WL 2815682, at *1 n.1 (S.D. Tex. June 20, 2014).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citations omitted). "The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n,*

*Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (cleaned up).  "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citation omitted).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmovant.  *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).  This means that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  "In reviewing whether there be a genuine dispute of material fact, the court is to consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."  *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019) (internal quotations omitted).

## III.   DISCUSSION

### A.   UNTIMELY "EVENTS"

CBC challenges the timeliness of "events" in Briceno-Belmontes's Charge.  (Dkt. No. 26 at 14–15).  As in its Motion to Dismiss, CBC makes the argument that unidentified "events" Belmontes "complains of" cannot serve as a basis for relief because they are outside the 300-day limitations period established by Title VII.  (Dkt. No. 26 at 14) (citing 42 U.S.C. § 2000e-5(e)(1)).  Briceno-Belmontes filed her Charge on January 15, 2020.  (Dkt. No. 26-7 at 2–3).  Because of the Title VII statutory bar, CBC asserts that "events" prior to March 21, 2019 are time barred.  (Dkt. No. 26 at 14).  CBC appears to argue that Title VII's limitations period means that litigants may not allege any facts or present evidence outside the Section 2000e-5(e)(1) window.  Briceno-Belmontes responds that she was fired

on June 10, 2019, and she filed her Charge within 300 days.  (*Id*. at ¶ 40).  She does not argue any claims that predate March 21, 2019—three-hundred days prior to the date she filed her Charge.

As stated in the Court's opinion on CBC's Motion to Dismiss, (Dkt. No. 46 at 5–6), CBC misses the mark.  A Title VII "plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged."  *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)), *abrogated on other grounds by Heath v. Bd. of Supervisors for S. Univ.*, 850 F.3d 731, 737 (5th Cir. 2017).  And "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002).  In this case, however, Briceno-Belmontes only relies on her June 10, 2019 termination.  (Dkt. No. 38 at ¶ 40).  This occurred within the statutory deadline.  *See Huckabay*, 142 F.3d at 238.  The acts in the record that occurred outside the filing period are merely "relevant background evidence."  *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

### B.   NATIONAL ORIGIN DISCRIMINATION CLAIM

Briceno-Belmontes does not claim to have direct evidence of national origin discrimination.  Claims of employment discrimination based on circumstantial evidence must be analyzed under the *McDonnell Douglas* burden shifting paradigm.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).  Under *McDonnell Douglas*, a plaintiff must first make a *prima facie* showing of employment discrimination by

demonstrating that she: (1) is a member of a protected class; (2) was qualified for the position she held; (3) was subject to an adverse employment action; and (4) was treated less favorably than others, similarly situated, outside her protected class. *Alkhawaldeh*, 851 F.3d at 426. Once the employee makes a *prima facie* case, the burden "shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer can articulate such a reason, "the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." *Id.* (internal quotations omitted).

### 1. Briceno-Belmontes fails to make a *prima facie* case of national origin discrimination.

CBC argues that Briceno-Belmontes cannot make a *prima facie* case of national origin discrimination. It is undisputed that Briceno-Belmontes satisfies the first three elements. (Dkt. No. 38 at ¶¶ 45–50); (Dkt. No. 26 at 17–18). But CBC contends that Briceno-Belmontes has not satisfied the fourth element: that she was treated less favorably than similarly situated employees who are not in her protected class.[3] (Dkt. No. 26 at 17–18). The "similarly situated" prong requires Briceno-Belmontes to identify at least one coworker outside her protected class who was treated more favorably "under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). This coworker, known as a "comparator," must have: (1) held the same job or the

---

[3] Another way to satisfy the fourth prong at the *prima facie* stage is to show that the plaintiff was replaced by someone outside her protected class. *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019). That route is not possible here because it is undisputed that Briceno-Belmontes was replaced by Jessica Cavazos, who is Hispanic. (Dkt. No. 26-1 at 98). Briceno-Belmontes makes no effort in her Response to the Motion for Summary Judgment to argue otherwise.

same responsibilities; (2) shared the same supervisor or have her "employment status determined by the same person"; and (3) received a similar history of "violations" or "infringements." *Alkhawaldeh*, 851 F.3d at 426. Briceno-Belmontes counters that the comparators she identified are sufficient. (Dkt. No. 38 at ¶¶ 45–50). The Court disagrees.

Briceno-Belmontes's comparators—Mercy Boamah and Kristen Jambers—are not similarly situated. It is undisputed that they are both academic advisors and recruiters, reported to Amanda Barrera, and are outside Briceno-Belmontes's protected class. But CBC protests that they had different violation histories and engaged in different conduct at work. (Dkt. No. 26 at 17–18). The burden is on Briceno-Belmontes to identify an academic advisor and recruiter whose violation history is similar to receiving an employee discipline notice, being admonished for email etiquette, ignoring meeting requests, and failing to complete required webinars. *See, e.g.*, *Alkhawaldeh*, 851 F.3d at 426–27 ("[T]o satisfy the 'similarly situated' prong, [the plaintiff] must identify at least one non-Muslim Jordanian Arab FS/FL in Dow's Epoxy Research and Development Group who received a 1 rating, as he did, and who completed a PIP, as he did, but who was not fired, as he was."). She does not.

In Briceno-Belmontes's Response—after having had the benefit of discovery—she only points to the deposition of Barrera to show that Jambers and Boamah had similar violation histories. Barrera testified that Jambers received a warning for taking unauthorized vacation days, (Dkt. No. 38-5 at 13), and that Boamah was never disciplined, but that "she wasn't getting the advising with the vocational classes versus the academic courses," (Dkt. No. 38-5 at 15). But this is not enough for Briceno-Belmontes

to successfully claim that Jambers and Boamah are similarly situated to her.  Indeed, the Record shows that Briceno-Belmontes:

1) Had disputes with coworkers as soon as she began work at CBC, (Dkt. No. 26-10) (July 2018 grievance of instructor Tomora Gambrell against Briceno-Belmontes); (Dkt. No. 26-25) (July 2018 grievance of Briceno-Belmontes against her supervisor, Cynthia Alvarado-Stinson); (Dkt. No. 26-17) (report of her supervisor, Hayen, detailing a long history of discord at work);

2) Had a habit of sending rude and insubordinate emails, (Dkt. No. 26-4); (Dkt. No. 26-5); (Dkt. No. 26-13); (Dkt. No. 26-14); (Dkt. No. 26-15); (Dkt. No. 26-20);

3) Was formally disciplined, (Dkt. No. 26-8);

4) Ignored meeting requests, (Dkt. No. 26-22); and

5) Did not complete mandatory training webinars. (*Id.*).

In light of the substantial evidence supplied by CBC, Briceno-Belmontes cannot show that a non-Hispanic academic advisor and recruiter, *similarly situated to her*, was not fired.  The record shows that both Jambers and Boamah had little to no disciplinary history.  "Critically," Briceno-Belmontes cannot point to "nearly identical" conduct by her two proffered comparators that "drew dissimilar employment decisions."  *Lee*, 574 F.3d at 260.  Therefore, CBC is entitled to summary judgment on Briceno-Belmontes's national origin discrimination claim because she has failed to establish a *prima facie* case.

### 2. Even if Briceno-Belmontes makes a *prima facie* case of national origin discrimination, she does not show that CBC's reason for firing her was pretextual.

Even if Briceno-Belmontes established a *prima facie* case of national origin discrimination, CBC has articulated non-discriminatory reasons for firing her: she was insubordinate and failed to comply with policies and procedures.  (Dkt. No. 26-2); *see*

*Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 322 (5th Cir. 2011) (per curiam) (identifying insubordination as a nondiscriminatory reason for discharge).  Briceno-Belmontes has failed to provide evidence that those reasons are a pretext for national origin discrimination.

"Pretext may be established through evidence of disparate treatment or by showing the employer's explanation to be false or unworthy of credence—that it is not the real reason for the adverse employment action." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (internal quotations omitted).  And "[i]f the employer offers more than one reason, the plaintiff must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates." *Id.* (emphasis in original) (internal quotations omitted).  Moreover, "the plaintiff must produce substantial evidence of pretext." *Id.* at 369 (internal quotations omitted).  "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021).  "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).  In answering this question, a court should consider "the probative value of the proof that the employer's explanation is false and any evidence that supports the employer's case." *Jones*, 8 F.4th at 369 (cleaned up).

Here, Briceno-Belmontes only seeks to prove that CBC's explanations are false—not that there was disparate treatment.  (Dkt. No. 38 at 14–22).  Briceno-Belmontes cites

her own affidavit as well as excerpts taken out of context from the depositions of Hayen, Villareal, Barrera, and Ganceres.  (*Id*.).  This evidence, at best, simply characterizes Briceno-Belmontes as an average CBC employee.  (*Id*.).  And it misunderstands her burden.  To proceed to trial, Briceno-Belmontes must demonstrate that CBC didn't "really" fire her for being insubordinate and failing to comply with policies and procedures, but that the "true" motive was that she is Hispanic.  Instead, she attempts to show that it was unwise or a mistake to fire her.  *See Shackelford*, 190 F.3d at 408 ("Merely disputing [her employer's] assessment of [the plaintiff's] work performance will not necessarily support an inference of pretext. . . . The issue is whether [her employer's] *perception* of [the plaintiff's] performance, accurate or not, was the real reason for her termination.").  In sum, she does not show with "substantial evidence" that CBC's nondiscriminatory reasons for firing her are "false or unworthy of credence."  *Jones*, 8 F.4th at 368–69.  As a result, Briceno-Belmontes has failed to raise to a genuine issue of material fact as to whether the legitimate nondiscriminatory reasons for firing her were a pretext for discrimination.

## C.   RETALIATION CLAIM

To establish a *prima facie* case of Title VII retaliation, a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal link exists between engaging in the protected activity and suffering the adverse employment action.  *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).  "An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or

(2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (internal quotations omitted).

### 1.    Briceno-Belmontes failed to exhaust her retaliation claim.

CBC first argues that Briceno-Belmontes failed to exhaust her administrative remedies because she failed to allege *Title VII* retaliation in her Charge.  (Dkt. No. 26 at 14–15).  Instead, CBC characterizes Briceno-Belmontes's Charge as alleging retaliation for "complain[ing] of supposed financial improprieties to the Texas Higher Education Coordinating Board" rather than alleging retaliation for "complaining of any discriminatory practice Title VII renders unlawful."  (Dkt. No. 39 at 7).  Briceno-Belmontes's Response urges that she was involved in activity that is protected by Title VII.  (Dkt. No. 38 at ¶¶ 41–44).  The Court disagrees.

In assessing the adequacy of her Charge, the Court is mindful of two competing considerations of the Title VII exhaustion requirement.  *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).  On one hand, "the scope of an EEOC complaint should be construed liberally" because the provisions of Title VII were not designed for "the sophisticated" and most EEOC charges are initiated *pro se*.  *Id.*  "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims."  *Id.* at 788–89.  To balance these considerations, the Court "interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge." *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (cleaned up).  This means the Court must "engage in fact-intensive analysis" of Briceno-Belmontes's statement in her Charge and "look slightly beyond its four corners, to its substance rather than its label." *Id.* (citations omitted).

The Court looks to the narrative in the Charge, as alleged by Briceno-Belmontes:

- Starting around February 2019, Hayen and Ganceres harassed Briceno-Belmontes verbally and over email "*to funnel and launder college funds* through [her] personal account and [she] continued to refuse as [she] believed what they were asking was illegal."

- She forwarded "the email" to Director of Human Resources Audrey Ramirez, "who did nothing."

- "Although [Briceno-Belmontes] always told them no to their request, they continued to harass [her] almost daily by putting more and more pressure on [her] themselves or through their subordinates.  It was either [she] got the job done with *deposited funds* and/or not got the job done or pay out of pocket for some student activity events or get fired [e]ither way."

- Hector Villarreal "harass[ed] [her] about *depositing money* into [her] personal account[.]"

- Audrey Ramirez "came in from Beeville to also harass [Briceno-Belmontes] *to deposit the money* and [she] still said no."

- On "June 10, 2019, *because [Briceno-Belmontes] would not do what they wanted*, [she] was terminated [after] being told it was for insubordination and violation of policy and procedures by being unprofessional."

- Last, she writes, "I believe I have been discriminated against because of my national origin (Mexican) and retaliated against once I informed the Texas Education Higher Coordinating board of Respondents staff requests for me to *accept college money through my*

14

> *personal bank account* in violation of Title VII of the Civil
> Rights Act of 1964, as amended."

(Dkt. No. 26-7 at 2–3) (emphases added).  The foregoing certainly alleges that Briceno-Belmontes was retaliated against for refusing to engage in what she perceived to be financial misconduct.  But it does not allege that she was retaliated against for engaging in activity protected by Title VII.

While Briceno-Belmontes checked the box for "retaliation" and complained of a type of retaliation in her Charge, she did not complain of Title VII retaliation.  Even construing all factual allegations in her Charge liberally, *see Pacheco*, 448 F.3d at 788, she at most lays out that she was retaliated against for opposing a putative illicit financial scheme, not for engaging in activity protected by Title VII.  Complaining of CBC's reimbursement practices is not protected by Title VII.  *See Long*, 88 F.3d at 304.  Briceno-Belmontes's failure to mention *any* activity protected by Title VII in her Charge, other than the unproven statement "I believe I have been discriminated against because of my national origin (Mexican) and retaliated against . . . in violation of Title VII" in the conclusory sentence of the narrative, (Dkt. No. 26-7 at 3), means that the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge" could not be expected to reach a retaliation claim.  *See Jennings*, 11 F.4th at 342; *see also Edmund v. Metro. Transit Auth.*, No. 4:08-CV-00087, 2009 WL 455268, at *6 (S.D. Tex. Feb. 23, 2009) (collecting cases).  Accordingly, the Court finds that summary judgment is appropriate on Briceno-Belmontes's retaliation claim because she failed to exhaust her administrative remedies.  *See also Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002)

(explaining that a retaliation claim is not expected to grow out of an EEOC charge that does not mention a complaint of discrimination, to whom the complaint was made, or what adverse action resulted from the complaint).

> **2.      Even if Briceno-Belmontes properly exhausted, she fails to make a _prima facie_ case of retaliation.**

Even assuming that Briceno-Belmontes exhausted her administrative remedies, CBC argues that her retaliation claim is legally deficient for two reasons: she fails to point to any protected activity in which she allegedly engaged, and she fails to show a causal connection between that protected activity and her termination.  (Dkt. No. 26 at 18–20).

First, her opposition to the "pressure campaign" to "funnel college funds through her personal bank account," (Dkt. No. 18 at ¶ 15), is not protected activity under Title VII. _See_ 42 U.S.C. § 2000e–3(a).  And there is no genuine dispute that Briceno-Belmontes engaged in any protected activity.  The _only_ evidence in the Record to support that she engaged in protected activity is her own deposition, which merely states, without more, that she complained of national origin discrimination "around" February 2019 and on April 29, 2019.  _See_ (Dkt. No. 38-3 at 3–4, 10, 14).  Meanwhile, in her Charge, Briceno-Belmontes marked June 10, 2019 — the date she was fired — as both the earliest and latest day "discrimination" took place, and she did not mark that there was any "continuing action."  (Dkt. No. 26-7 at 2).  CBC also points to her inability in her deposition to substantiate her allegation that national origin discrimination was discussed in the April 29, 2019 meeting.  (Dkt. No. 26-1 at 109–15).  These facts directly contradict her cursory deposition testimony that she complained of national origin discrimination.  Given this

conflict in Briceno-Belmontes's own materials, her "self-serving statements" that she complained to her superiors of national origin discrimination "are insufficient to create a triable issue of fact[.]" *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020); *see also Belmontez v. Texas A&M Univ.-Kingsville*, No. 2:15-CV-00086, 2017 WL 1542192, at *4 (S.D. Tex. Apr. 27, 2017) ("[S]elf-serving statements made in affidavits are not sufficient to raise a genuine issue of material fact in the face of overwhelming evidence to the contrary." (internal quotations omitted)).

Second, Briceno-Belmontes fails to make a *prima facie* case of causation. The only argument she raises to establish a causal link between her protected activities and her firing is one of temporal proximity. (Dkt. No. 38 at ¶¶ 51, 53). Even assuming complaints of discrimination happened in February and April 2019, that would be a four-month difference between her first protected activity and her firing. Here, CBC makes a two-pronged argument, which it says is dispositive: (1) the Court *must* measure the difference between the February 2019 complaint and Briceno-Belmontes's firing—not the April 2019 complaint and her firing; *and* (2) that the difference between the first complaint and her firing is too long to create an inference of causation as a matter of law. (Dkt. No. 39 at 12) (citing *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)). The Court agrees with CBC.

The Fifth Circuit has indicated that a four-month gap, alone, is too long to permit an inference of causation, even at the *prima facie* stage. *Alkhawaldeh*, 851 F.3d at 428 n.23 (citing *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011)). What is more, "a Title VII claimant cannot, with each protected activity, re-start 'the

temporal-proximity clock.'"  *Id.*  Thus, Briceno-Belmontes is also unable to establish *prima facie* causation.

The summary judgment Record shows that Briceno-Belmontes: (1) failed to bring a Charge of Title VII retaliation; (2) fails to identify any activity protected by Title VII as the basis for which she was retaliated; and (3) even assuming she had engaged in protected activity, fails to establish a causal connection between the putative protected activity and her firing.  For these independent reasons, she fails to make a *prima facie* case of Title VII retaliation.[4]  The Court grants summary judgment on this claim.[5]

## IV.   CONCLUSION

Considering the foregoing analysis, the Court **GRANTS** CBC's Motion for Summary Judgment.  (Dkt. No. 26).  The Court **DISMISSES WITH PREJUDICE** Briceno-Belmontes's claims under Title VII for national origin discrimination and retaliation.

It is SO ORDERED.

---

[4]   There is even a fourth reason to grant summary judgment for CBC on her retaliation claim.  As with her national origin discrimination claim, she has also failed to rebut CBC's reasons for firing her as pretextual.  *See Alkhawaldeh*, 851 F.3d at 427, 430 ("In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that the adverse [employment] action would not have occurred but for the employee's decision to engage in an activity protected by Title VII. . . . The but for standard represents a high burden[.]" (internal quotations omitted)); *Jones*, 8 F.4th at 369.

[5]   CBC notes that it is unclear whether Briceno-Belmontes asserts a hostile work environment claim but nonetheless argues that the claim, if properly asserted, is without merit. (Dkt. No. 26 at 22–23).  As the Court explained in its order on the Motion to Dismiss, Briceno-Belmontes does not assert a hostile work environment claim.  (Dkt. No. 46 at 16 n.4).

Signed on March 29, 2022.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**